**BECKER LLC**
Joseph G. Harraka, Jr., Esq. (007731990)
Erik B. Derr, Esq. (145552015)
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
(973) 422-1100
jgharraka@becker.legal
ederr@becker.legal
Attorneys for Plaintiff
Celularity Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CELULARITY INC.,<br><br>Plaintiff,<br><br>v.<br><br>EVOLUTION BIOLOGYX, LLC, SALEEM S. SAAB, INDIVIDUALLY, AND ENCYTE, LLC,<br><br>Defendants. | CASE NO.: |

**VERIFIED COMPLAINT**

Plaintiff Celularity Inc. ("Plaintiff"), by and though its attorneys, Becker LLC, files this Verified Complaint against defendants Evolution Biologyx, LLC ("Evolution"), Saleem S. Saab, individually ("Saab"), and Encyte, LLC ("Encyte")

[Biologyx, Saab, and Encyte, collectively, "Defendants", Biologyx and Encyte, collective, "Corporate Defendants"] and in support thereof alleges as follows:

## PARTIES

1. Plaintiff is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Florham Park, New Jersey.

2. Upon information and belief, Evolution is Pennsylvania Limited Liability Company with its principal place of business located at 4001 Schoolhouse Lane, Center Valley, PA 18034.

3. Upon information and belief, Evolution's members are domiciled in and residents of Pennsylvania.

4. Upon information and belief, Saab, an individual and the CEO and President of Evolution, is domiciled in Bethlehem, Pennsylvania. As such, Saab is a citizen of Pennsylvania for the purposes of diversity jurisdiction.

5. Upon information and belief, Encyte is a Pennsylvania Limited Liability Company with its principal place of business located at 4001 Schoolhouse Lane, Center Valley, PA 18034.

6. Upon information and belief, Encyte's members are domiciled in and residents of Pennsylvania.

7. Upon information and belief, Encyte and Evolution share the same corporate principal, Saab.

8. On its website (https://www.evolutionbiologyx.com/our-network/) Evolution advertises Encyte as a "partner."

9. Likewise, on its website (https://www.encytemedical.com/) Encyte advertises itself as a "partner" of Evolution.

10. Upon information and belief, Evolution and Encyte operate out of the same office with an office registered with the Commonwealth of Pennsylvania Secretary of State at 4001 Schoolhouse Lane, Center Valley, PA 18034.

11. Evolution and Encyte have the same principal officer, Saab, who holds himself out to the public as the Chief Executive Office of both entities.

12. Upon information and belief, Evolution and Encyte are conducting business operations as though they are the same entity, despite their separate corporate forms.

13. Upon information and belief, Encyte operates as the alter ego or mere instrumentality of Evolution.

14. The failure to disregard the separateness of Evolution and Encyte would, in this instance, sanction a fraud or promote injustice against Plaintiff.

## JURISDICTION AND VENUE

15. Federal diversity jurisdiction exists, pursuant to 28 U.S.C. § 1332 because complete diversity jurisdiction exists among the parties.

16. Plaintiff, for the purposes of diversity jurisdiction, is domiciled in Delaware and New Jersey.

17. Upon information and belief, Corporate Defendants and each of their members, for the purposes of diversity jurisdiction, are domiciled in Pennsylvania.

18. Upon information and belief, Saab is domiciled in, and a resident of, Pennsylvania.

19. The amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000.

20. The claims set forth herein derive from Corporate Defendants' breach of an agreement regarding Plaintiff's shipment of certain medical products (the "Products") from New Jersey to Pennsylvania.

21. Therefore, venue in this District Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims asserted herein are based in this District.

22. Corporate Defendants purposefully availed themselves to the benefits of the State of New Jersey by specifically ordering the products at issue from Plaintiff, knowing that their order of such products as outlined in detail below would have significant effects and impact in the State of New Jersey.

## FACTS APPLICABLE TO ALL COUNTS

23. After extended discussions and negotiations, Plaintiff and Corporate Defendants entered into a "Supply and Distribution Agreement" on or about September 1, 2021 (the "Agreement"). A true and accurate copy of the Agreement is attached hereto as Exhibit "A" and is incorporated herein by this reference.

24. Pursuant to the Agreement, Plaintiff, as the owner of rights to the Products, agreed to appoint Corporate Defendants as distributors of the Products subject to the terms and conditions of the Agreement.

25. Section 4.4. of the Agreement specifically provides:

All payments owed under this Agreement shall be made by wire transfer of immediately available funds into an account designated by Celularity. If Celularity does not receive payment of any undisputed sum due to it on or before the due date, simple interest shall thereafter accrue on the sum due date until the date of payment at the monthly rate of one percent (1.0%) over the then-current prime rate reported in the Wall Street Journal or the maximum rate allowable by applicable Laws, whichever is lower.

26. From late 2021 through early 2022 Corporate Defendants placed several orders to purchase Plaintiff's Products under to the Agreement.

27. Plaintiff fulfilled Corporate Defendants' orders and otherwise performed each of its obligations under the Agreement and invoiced Corporate Defendants for the Products that it sold to Corporate Defendants (the "Invoices").

28. To date, and despite multiple demands made by Plaintiff, Corporate Defendants have refused and continue to refuse to pay any of the Invoices.

29. The table set forth below reflects the Invoices and open balances owed by Corporate Defendants and substantiates that Corporate Defendants currently owe a total amount of $2,349,250.00, plus the interest charges contemplated under the Agreement, to Plaintiff.

| Invoice Date | Invoice Number | Purchase Order | Due Date | Open Balance |
|---|---|---|---|---|
| 12/15/2021 | INV2796 | 1019 | 03/15/2022 | $282,050.00 |
| 01/18/2022 | INV2888 | 1019 | 03/19/2022 | $144,200.00 |
| 01/27/2022 | INV2921 | 1035 | 03/28/2022 | $130,000.00 |
| 01/28/2022 | INV2927 | 1035 | 03/29/2022 | $910,000.00 |
| 02/28/2022 | INV3020 | 1039 | 04/29/2022 | $883,000.00 |
|  |  |  | **TOTAL:** | $2,349,250.00 |

30. True and accurate copies of the Invoices are collectively attached hereto as Exhibit "B" and are incorporated herein by this reference.

31. Corporate Defendants' failure to pay any of the Invoices comes despite the fact that on April 19, 2022, Saab, promised to pay to the Plaintiff the $883,000.00 balance due and owing for Invoice No. INV3020, as well as "the past amounts due" on the remaining invoices.

32. Upon information and belief, Corporate Defendants have a market to sell Plaintiff's Products and have been actively selling the Products to buyers and retaining the monies received from such sales despite their outstanding obligation to pay Plaintiff a total of $2,349.250.00 under the Agreement.

33. On March 13, 2023, as required under the Agreement, Plaintiff issued a "Notice of Breach of Supply and Distribution and Final Demand for Payment" to Corporate Defendants (the "Notice") placing Corporate Defendants on notice of Plaintiff's claims. A true and accurate copy of the Notice is attached hereto as Exhibit "C" and is incorporated herein by this reference.

34. After Corporate Defendants failed to remit payment, Plaintiff issued a notice of termination (the "Notice of Termination"), dated April 13, 2023, terminating the Agreement due to Corporate Defendants' failure to cure their material breach as set forth in the Notice. A true and accurate copy of the Termination Notice is attached hereto as Exhibit "D" and is incorporated herein by this reference.

35. The Termination Notice included a demand that Corporate Defendants immediately cease the sale or marketing of the Products and remove all references to Plaintiff from their web pages.

36. Corporate Defendants' failures to adhere to the requests in the Termination Notice are likely to yield irreparable harm to Plaintiff, including loss of

good will in the corporate marketplace and an immeasurable amount of damage associated with the misappropriation of Plaintiff's business image and likeness.

37. Despite the assurances received from Saab, and Corporate Defendants' obligation to pay the Invoice amounts to Plaintiff, an outstanding balance of $2,349.250.00 remains due and owing to Plaintiff by Defendants.

38. To date, and despite demand, Corporate Defendants continue to market the Products on their websites.

## COUNT I

### (Breach of Contract as to Corporate Defendants)

39. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

40. The Agreement constitutes a valid and legally binding contract and Plaintiff is entitled to enforce the terms of the Agreement against Corporate Defendants.

41. Plaintiff has performed all of its obligations under the Agreement.

42. Corporate Defendants' acts and omissions as described above, namely failure to timely pay the Invoices, constitutes a clear breach of the terms of the Agreement.

43. As a direct and proximate result of Corporate Defendants' breach, Plaintiff has suffered substantial damages for which it is entitled to be compensated, plus interest, under the Agreement.

## COUNT II

### (Breach of Good Faith & Fair Dealing as to Corporate Defendants)

44. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

45. The Agreement contained an implied covenant of good faith and fair dealing to which Corporate Defendants are bound.

46. Corporate Defendants' acts and omissions as aforesaid, are in bad faith and for the purpose of frustrating the overarching purpose of the Agreement, constituting a breach of the implied covenant of good faith and fair dealing.

47. As a direct and proximate result of Corporate Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered substantial damages for which it is entitled to be compensated.

## COUNT III

### (Unjust Enrichment as to Corporate Defendants)

48. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

49. Plaintiff conferred a direct and substantial benefit upon Corporate Defendants by providing the Products at Corporate Defendants' request.

50. Plaintiff's shipment of products to Corporate Defendants constitutes an impoverishment.

51. Corporate Defendants' enrichment was the direct and proximate result of Plaintiff's impoverishment.

52. Corporate Defendants have no justification for their failure to pay Plaintiff for the Products or for failing return the same to Plaintiff.

53. Corporate Defendants' retention of the Products conferred by Plaintiff without payment for the same constitutes an unjust enrichment at Plaintiff's expense for which there is no remedy provided by law and has caused Plaintiff to incur significant damage.

## COUNT IV

### (Quantum Meruit as to Corporate Defendants)

54. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

55. Plaintiff conferred a direct and substantial benefit upon Corporate Defendants by providing the Products at Corporate Defendants' request.

56. Plaintiff reasonably expected to be compensated for the fair value of the Products Plaintiff provided Corporate Defendants.

57. Corporate Defendants knew or should have known that Plaintiff expected compensation for the Products Plaintiff provided to Corporate Defendants.

58. To date, Corporate Defendants have not paid Plaintiff for the Products issued to Corporate Defendants, despite demand for the same.

## COUNT V

### (Promissory Estoppel as to Corporate Defendants)

59. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

60. Corporate Defendants made clear and definite promises to pay Plaintiff for the Products listed in the Agreement in order to induce Plaintiff to ship the Products to Corporate Defendants.

61. In reasonable reliance on Corporate Defendants' promises, Plaintiff was induced to ship its products to Corporate Defendants.

62. Plaintiff reasonably expected to be compensated for the products shipped to Corporate Defendants, for which Corporate Defendants have received the benefit, and for which Corporate Defendants have failed to compensate Plaintiff.

63. Plaintiff has incurred significant damages as a result of its reliance on Corporate Defendants' promises.

## COUNT VI

### (Promissory Estoppel as to Saab)

64. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

65. On April 19, 2022 Saab made clear and definite promises to pay Plaintiff in order to induce Plaintiff to forestall Plaintiff's efforts to pursue the amounts due and owing from Corporate Defendants.

66. In reasonable reliance on Saab's promises, Plaintiff was induced to temporarily relinquish its rights to pursue immediate payment of the Invoices.

67. Plaintiff reasonably expected to be compensated in accordance with Saab's representations.

68. Plaintiff has incurred significant damages as a result of its reliance on Saab's promises.

## COUNT VII

### (Account Stated as to all Defendants)

69. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

70. The transactions between Plaintiff and Corporate Defendants establish the creditor/debtor relationship between them for the sale of the Products.

71. Corporate Defendants did not timely object to the Invoices for the Products delivered by Plaintiff.

72. To the contrary, on April 19, 2022, Corporate Defendants and Saab expressly admitted in writing to the $883,000.00 balance owed for Invoice No. INV3020 and implicitly admitted to the amounts due and owing on the remaining Invoices.

73. Corporate Defendants and Saab made and express and/or implied promise to pay sums due on the Invoices, but nonetheless failed to make the promised payments.

74. Plaintiff sustained substantial damages as a result of Defendants' failure to pay the Invoices.

## COUNT VIII

### (Fraudulent Inducement as to all Defendants)

75. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

76. Corporate Defendants and Saab made various false representations and assurances to Plaintiff that payment would be made for the outstanding Invoices, including, not limited to, those made by, Saab by email to Plaintiff's Executive Vice President and Chief Operating Officer, John R. Haines, on April 19, 2022.

77. Corporate Defendants and Saab knew at the time these representations were made that payment due on the Invoices would not be forthcoming.

78. Corporate Defendants and Saab made these representations and assurances with the intent to deceive Plaintiff and forestall Plaintiff's efforts to pursue the amounts due and owing from Defendants.

79. Plaintiff justifiably believed the representations and assurances, and in reliance thereon temporarily relinquished its rights to pursue immediate payment of the Invoices.

80. As a result of Plaintiff's reliance on Defendants' representations and assurances, Plaintiff has and will continue to incur substantial damages for which it is entitled to be compensated.

## **COUNT IX**

### **(Conversion)**

81. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

82. Plaintiff had a property interest in the product shipped to Corporate Defendants.

83. Absent payment for the products from Corporate Defendants to Plaintiff, Plaintiff has a right to possession of the products.

84. Corporate Defendants converted Plaintiff's property, the products, by retaining the Products and failing to compensate Plaintiff for the same.

85. As a result of Corporate Defendants' improper dominion and control over Plaintiff's products, Plaintiff has been damaged in an amount to be proven at trial.

86. Plaintiff has been further damages in the form of time and money expended in pursuit of its wrongfully converted property.

**WHEREFORE**, Plaintiff demands judgment against Defendants for full damages, injunctive relief prohibiting Corporate Defendants from selling or marketing Plaintiff's Products and requiring the removal of all references to Plaintiff from Corporate Defendants' web pages, together with attorney's fees, interest, costs of suit together and such other relief as the Court may deem just and proper.

                              **BECKER LLC**
                              Attorneys for Plaintiff
                              Celularity Inc.

                              By: /s/ Joseph G. Harraka, Jr., Esq.
                                    Joseph G. Harraka, Jr., Esq.

Dated: April 17, 2023

## Verification

I, John R. Haines, declare as follows:

1. I am the authorized representative of Plaintiff, Celularity Inc. in the present case and a citizen of the United States of America.

2. As such, I have personal knowledge of the facts set forth in the Verified Complaint, and if called on to testify I would competently testify to the matters stated therein.

3. I verify that the factual statements in the Verified Complaint are true to the best of my knowledge.

**PURSUANT TO 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on April 17, 2023

_____
John R. Haines