**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CELULARITY INC.,<br><br>Plaintiff,<br><br>v.<br><br>EVOLUTION BIOLOGYX, LLC, *et al.*,<br><br>Defendants. | Case No. 23cv2135 (EP) (LDW)<br><br>**OPINION** |

**PADIN, District Judge.**

This matter concerns a contractual dispute, arising out of Defendant Evolution Biologyx, LLC's ("Biologyx") failure to pay Plaintiff Celularity Inc. ("Celularity") for placental-derived products. Biologyx, along with the two other named Defendants, Saleem S. Saab ("Saab") and Encyte, LLC ("Encyte"), move to dismiss the Complaint, D.E. 1 ("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 18. This matter will be decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendants' motion to dismiss will be **GRANTED *in part*** and **DENIED *in part***.

## I. BACKGROUND[1]

Plaintiff, a Delaware corporation with its principal place of business in New Jersey, sells placental-derived products ("Products"). Compl. ¶ 1; D.E. 2 ("Agreement") at 1, 5.[2] Biologyx, a

[1] The facts in this section are taken from the well-pled factual allegations in the Complaint, which the Court presumes to be true for purposes of this motion. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). The Court is not required to accept as true "mere conclusory statements." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotations omitted).

[2] Because Plaintiff attached a copy of the "Supply and Distribution Agreement" to the Complaint, the Court may consider it here. *See Donachy v. Playground Destination Props., Inc.*, 2013 U.S. Dist. LEXIS 101178, at *2-3 n.2 (D.N.J. July 19, 2013) (considering parties' agreement on motion

Pennsylvania limited liability company with its principal place in Pennsylvania, entered into an agreement with Plaintiff to buy Plaintiff's Products for the purposes of marketing, selling, and distributing the same ("Agreement"). Compl. ¶¶ 23-24; Agreement at 1. Saab, a Pennsylvania resident, is[3] Biologyx's Chief Executive Officer ("CEO") and President; the Agreement identifies Saab as Biologyx's representative. Compl. ¶ 4; Agreement ¶ 1.41.

Encyte, a Pennsylvania limited liability company with its principal place of business in Pennsylvania, is not party to the Agreement, but is named in this Complaint because it shares a corporate principal and principal place of business with Biologyx and advertises itself as Biologyx's partner. Compl. ¶¶ 5-7, 9-11; *see also generally* Agreement.

Between late 2021 through early 2022, Biologyx[4] placed several orders to purchase Plaintiff's Products pursuant to the Agreement. Compl. ¶ 26. Plaintiff fulfilled Biologyx's orders and provided Biologyx with invoices for the Products ("Invoices"). *Id.* ¶ 27; D.E. 2-1 (invoices from Plaintiff billed to Biologyx).[5] Despite several demands for payment, Biologyx failed to pay the Invoices. *Id.* ¶ 28. The total amount due on the unpaid Invoices is $2,349,250.00. *Id.* ¶ 29.

Pursuant to the Agreement,

> [a]ll payments owed under this Agreement shall be made by wire transfer of immediately available funds into an account designated by Celularity. If Celularity does not receive payment of any undisputed sum due to it on or before the due date, simple interest

---

to dismiss as agreement was attached to complaint by plaintiff); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting court may consider "documents that are attached to or submitted with the complaint").

[3] At all relevant times.

[4] The Complaint groups together Biologyx and Encyte as "Corporate Defendants." However, because the Agreement expressly identifies Biologyx, and makes no mention of Encyte, as a party to the Agreement or otherwise, the Court will reference Biologyx as the party that entered the Agreement.

[5] Because Plaintiff attached copies of the Invoices to the Complaint, the Court may consider them. *See Buck*, 452 F.3d at 260.

> shall thereafter accrue on the sum due date until the date of payment . . . .

Compl. ¶ 25; Agreement ¶ 4.4.

In April 2022, Saab, on behalf of Biologyx, and John Haines,[6] on behalf of Plaintiff, corresponded via email concerning, *inter alia*, Biologyx's failure to pay the Invoices in compliance with the Agreement. D.E. 24-1.[7]

In case of a material breach, the Agreement provides,

> [i]f either Party believes that the other is in material breach of this Agreement, then the Party holding such belief ("the Non-breaching Party") may deliver notice of such breach to the other Party (the "Notified Party"). The Notified Party will have thirty (30) days to cure such breach . . . . If the Notified Party fails to cure a material breach of this Agreement [], then the Non-breaching Party may terminate this Agreement in its entirety upon written notice to the Notified Party.

Agreement ¶ 9.2.

In March 2023, Plaintiff issued a "Notice of Breach," notifying Biologyx that its failure to pay the Invoices constitutes a material breach of the Agreement. Compl. ¶ 33; D.E. 2-2.[8] Plaintiff also provided that if the breach was not cured within thirty days, then the Agreement would be terminated. Compl. ¶ 33; D.E. 2-2. In April 2023, after Biologyx failed to cure its material breach,

---

[6] Executive Vice President and Chief Operating Officer of Celularity.

[7] The Complaint alleges that "despite the fact that on April 19, 2022, Saab, promised to pay to the Plaintiff the $883,000.00 balance due and owing for Invoice No. INV3020, as well as 'the past amounts due' on the remaining invoices." Compl. ¶ 31. Plaintiff does not attach the referenced April 2022 email correspondence to the Complaint. However, in support of their motion to dismiss, Defendants attach the email correspondence. *See* D.E. 24-1. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1996). Because Plaintiff's claims against Saab arise from the email correspondence, the Court will consider it. *See id.*

[8] Because Plaintiff attached a copy of the Notice of Breach to the Complaint, the Court may consider the notice in deciding the pending motion to dismiss. *See Buck*, 452 F.3d at 260.

Plaintiff issued a "Notice of Termination," notifying Biologyx of the Agreement's termination. Compl. ¶ 34; D.E. 2-3.[9]

According to the Agreement, upon its termination, Biologyx would lose the right "to distribute or sell [the] Product[s], other than to Celularity for liquidation by Celularity of its Product inventory, or to return any inventory . . . ." Agreement ¶ 9.3. Plaintiff's Notice of Termination expressly "demand[ed] that [Biologyx] immediately cease the sale or marketing of the Products in any manner and [that Biologyx] remove all references to Celularity's Marks from [its] website." Compl. ¶ 35; D.E. 2-3. At the time the Complaint was filed, Biologyx had yet to pay the Invoices and continued to market Plaintiff's Products on its website. Compl. ¶¶ 37-38.

Furthermore, the Agreement expressly provides that Delaware law shall govern the Agreement and its construction. Agreement ¶ 12.8.

In April 2023, Plaintiff filed a nine-count Complaint against Defendants stemming from Biologyx's alleged breach of the Agreement. *See generally* Compl. In July 2023, Defendants moved to dismiss Counts I through IX as to Encyte, which consist of a breach of contract claim, quasi-contractual claims (*i.e.*, unjust enrichment), and related tort claims; Count VI through VIII as to Saab,[10] which consist of a promissory estoppel claim, an account stated claim, and a fraudulent inducement claim; and Counts II through IX as to Biologyx, which consist of quasi-contractual claims (*i.e.*, unjust enrichment) and tort claims. D.E. 18-1 ("Mot."). Plaintiff filed an

[9] Because Plaintiff attached a copy of the Notice of Termination to the Complaint, the Court may consider the notice in deciding the pending motion to dismiss. *See Buck*, 452 F.3d at 260.

[10] Because Count IX does not name Saab nor do the allegations therein make any reference to Saab, the Court will not assume that Count IX is directed at Saab.

opposition. D.E. 23 ("Opp'n"). Defendants filed a reply. D.E. 24 ("Reply").[11] Being fully-briefed, the Court will now decide Defendants' motion to dismiss.

## II. LEGAL STANDARD

A defendant may move to dismiss an action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a Rule 12(b)(6) motion, a reviewing court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled factual allegations "allow[ a reviewing] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, a reviewing court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996))

---

[11] The parties filed a series of letters concerning an issue immaterial to the pending motion. D.E.s 26-27. The Court will not consider these letters herein.

(holding that a court may consider a "'*document integral or explicitly relied upon* in the complaint'" without converting the motion into one for summary judgment); *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining court may examine an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

## III. DISCUSSION

### A. Choice of Law

As an initial matter, the Court addresses what state's laws apply to each claim.

#### 1. *Breach of Contract Claim (Count I)*

The parties do not dispute the validity of the Agreement's choice of law provision. "New Jersey choice-of-law rules provide that 'ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy.'" *Collins ex rel. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017) (quoting *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992)). The Agreement contains a choice of law provision, which provides that Delaware law governs. Agreement ¶ 12.8 ("Governing Law and Dispute Resolution. The laws of the State of Delaware, USA shall govern this Agreement and its construction . . . ."). Delaware and New Jersey law are substantially similar with respect to contract law; in other words, applying Delaware law here will not function as a violation of New Jersey's public policy. Accordingly, in line with the Agreement's choice of law provision, the Court will apply Delaware law with respect to Plaintiff's breach of contract claim.

2. *Implied Covenant of Good Faith and Fair Dealing Claim (Count II)*

Given that "[t]he covenant of good faith and fair dealing arises under contract," and Plaintiff's breach of contract claim is governed by Delaware law, it follows that Plaintiff's implied covenant of good faith and fair dealing claim must also be analyzed under Delaware law in accordance with the Agreement's choice of law provision. *See Hatteras Press, Inc. v. Avanti Computer Sys.*, 2017 U.S. Dist. LEXIS 101732, at *10 (D.N.J. June 30, 2017) (analyzing implied covenant of good faith and fair dealing claim under Delaware law in light of choice of law provision contained in contract).

3. *Quasi-Contractual and Tort Claims (Counts III through IX)*

With respect to Plaintiff's quasi-contractual and tort claims, the parties do not dispute the application of New Jersey law. *See* Mot. at 11 n.1 (noting Defendants would provide authority for both Delaware and New Jersey law with respect to quasi-contractual and tort claims); Opp'n at 9 ("Courts applying New Jersey law . . . ."). Thus, at this juncture, there is no reason for the Court to challenge the parties' consensual choice of law. *See Sweeney v. Alcon Labs., Inc.*, 2018 U.S. Dist. LEXIS 41776, at *7-8 (D.N.J. Mar. 14, 2018) (finding no reason to challenge parties' consensual choice of law in deciding motion to dismiss); *Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*, 2008 U.S. Dist. LEXIS 83076, at *18 (D.N.J. Oct. 17, 2008) (noting that as parties "cited to New Jersey and Pennsylvania law without presenting an argument as to why [c]ourt should apply" one state's law over the other, court would apply New Jersey law to state law claims). Accordingly, the Court will apply New Jersey law with respect to Plaintiff's quasi-contractual and tort claims.[12]

---

[12] The Court notes that its application of New Jersey law herein does not foreclose the possibility of a choice of law issue being raised later. *See Kancor Ams., Inc. v. ATC Ingredient Inc.*, 2015 U.S. Dist. LEXIS 44454, at *7 (D.N.J. Apr. 2, 2015) (applying New Jersey law for purposes of

**B. The Claims Against Encyte Will Be Dismissed (Counts I through V and VII through IX)**

As pled, the claims against Encyte hinge on whether the Complaint adequately alleges that Encyte is an alter ego of Biologyx. Defendants argue that Encyte is a separate corporate entity from Biologyx with no ties to Plaintiff; therefore, the claims brought against Encyte must be dismissed. Mot. at 1-2, 9. At this juncture, the Court agrees with Defendants.

*1. The breach of contract claim against Encyte will be dismissed (Count I)*

Defendants seek to dismiss Plaintiff's breach of contract claim with respect to Encyte, arguing that Encyte was not a party to the Agreement, and therefore, it cannot be held liable under it. Mot. at 3-4, 9; Reply at 7-8. Plaintiff responds that Encyte can be held liable under the Agreement based on an alter ego theory; in other words, as the alter ego of Biologyx, Encyte is liable under the Agreement if Biologyx is liable. Opp'n at 5-6. The Court concludes that Plaintiff has not adequately pled that Encyte is liable under an alter ego theory.

To establish a claim for breach of contract, a plaintiff must show that "the parties entered into a valid contract, that the defendant failed to perform its obligations under the contract[,] and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). A contract claim cannot typically be maintained against one who is not a party to the contract. *Adam Techs. LLC v. Well Shin Tech. Co.*, 2021 U.S. Dist. LEXIS 8180, at *18 (D.N.J. Jan. 15, 2021) (citing *Comly v. First Camden*, 22 N.J. Misc. 123, 127 (N.J. Super. 1944)).

On the face of the Agreement, the parties who entered into a contract are Celularity and Biologyx. Agreement at 1 ("This [Agreement] made effective as of September 1, 2021 [] is made between Celularity Inc. . . . and Evolution Biologyx, LLC . . . ."). Encyte is mentioned nowhere

---

motion to dismiss, but noting it was premature to definitively decide choice of law issue, which could be raised again later).

in the Agreement. *See generally* Agreement; *Zweigenhaft v. PharMerica Corp.*, 2020 U.S. Dist. LEXIS 161279, at *5-6 (D. Del. Sept. 3, 2020) (internal quotation marks and citation omitted) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract."). Thus, Plaintiff's breach of contract may only proceed against Encyte if Plaintiff has pled an alternate basis to conclude that the Agreement is enforceable against Encyte.

A contract may only be "enforced by or against nonparties to [a] contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, beneficiary theories, waiver and estoppel.'" *Adam Techs. LLC*, 2021 U.S. Dist. LEXIS, at *18 (quoting *Arthur Andersen LLP v. Calisle*, 556 U.S. 624, 631 (2009)). An alter ego theory permitting a court to "[d]isregard[] the corporate entity is appropriate 'only in exceptional circumstances.'" *Voterlabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 U.S. Dist. LEXIS 179481, at *13 (D. Del. Sept. 21, 2021) (quoting *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012)). Exceptional circumstances require that "fraud or injustice be found in the defendants' use of the corporate form." *Marnavi S.p.A.*, 900 F. Supp. 2d at 392.

Here, Plaintiff asserts that the Agreement may be enforced against Encyte because Encyte "operates as the alter ego or mere instrumentality of [Biologyx]." Compl. ¶ 13. In this regard, the Complaint merely alleges: Defendants' respective websites list each other as partners, *id.* ¶¶ 8-9; "[u]pon information and belief, [Biologyx] and Encyte operate out of the same office[,]" *id.* ¶ 10; "[Biologyx] and Encyte have the same principal officer, Saab, who holds himself out to the public as the Chief Executive Office[r] of both entities," *id.* ¶ 11; and "[u]pon information and belief, [Biologyx] and Encyte are conducting business operations as though they are the same entity, despite their separate corporate forms," *id.* ¶ 12. Plaintiff claims, therefore, "[t]he failure to

disregard the separateness of [Biologyx] and Encyte would, in this instance, sanction a fraud or promote injustice against Plaintiff." *Id.* ¶ 14. As pled, the Court disagrees with Plaintiff.

Blatantly missing from Plaintiff's allegations is any hint that Defendants' "use of the corporate form itself" was the source of any fraud or injustice against Plaintiff. *Zweigenhaft*, 2020 U.S. Dist. LEXIS 161279, at *4-5 (finding that plaintiff did not adequately plead that defendants were alter egos of one another where plaintiff failed to allege that the corporate structure of the two defendants acting as one entity "caused fraud, injustice, or unfairness," against plaintiff). Plaintiff merely alleges, in a conclusory fashion,[13] that Defendants were functioning as a single entity, however, the Complaint is devoid of any factual allegations that Biologyx and Encyte's corporate structures acting as one entity "caused fraud, injustice or unfairness" to Plaintiff. *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 619-20 (D. Del. 2018) (citations omitted) ("For example, while any party that brings a legal claim (e.g., for breach of contract[)] against a purported alter ego company can assert that an 'injustice' is being done to them (e.g., based on the facts that give rise to their claim for breach of contract[)], that is not the kind of 'injustice' that is relevant."). Therefore, Plaintiff has not sufficiently alleged any basis for Encyte to be held liable under the Agreement. *See Zweigenhaft*, 2020 U.S. Dist. LEXIS 161279, at *5-6 (granting motion to dismiss with respect to claims against defendant that was not a party to contract at issue).

Accordingly, Plaintiff's breach of contract claim, Count I, will be dismissed as to Encyte.

---

[13] "[B]ecause Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Microstrategy Inc. v Acacia Rsch. Corp.*, 2010 Del. Ch. LEXIS 254, at *46 (Del. Ch. Dec. 30, 2010).

2. *The implied covenant of good faith and fair dealing claim against Encyte will be dismissed (Count II)*

Similarly premised on the argument that Encyte is not an alter ego of Biologyx, Defendants seek to dismiss Plaintiff's good faith and fair dealing claim as to Encyte. *See* Mot. at 9; Reply at 8. Because the Court has found that Plaintiff has inadequately pled that Encyte is liable under the Agreement, Plaintiff's good faith and fair dealing claim against Encyte also fails.

"Every contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002). This implied covenant requires that "each party to the contract [] act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract." *MRPC Christiana LLC v. Crown Bank*, 2017 Del. Super. LEXIS 679, at *9 (Del. Super. Ct. Dec. 26, 2017) (citations omitted) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997); *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993)).

Critically, there is no underlying contract between Encyte and Biologyx, *supra* III.B.1. "There can be no breach of the implied covenant of good faith and fair dealing unless the parties have a contract." *MRPC Christiana LLC*, 2017 Del. Super. LEXIS 679, at *10 (citing *Wade*, 172 N.J. at 345). Accordingly, Plaintiff's good faith and fair dealing claim, Count II, will be dismissed as to Encyte.

3. *The quasi-contractual claims and tort claims against Encyte will be dismissed (Counts III through V and VII through IX)*

Like the claims above, Defendants seek to dismiss Plaintiff's quasi-contractual and tort claims against Encyte because Encyte is not an alter ego of Biologyx. *See* Mot. at 9. As outlined above, *see supra* Section III.B.1., Plaintiff has failed to set forth factual allegations supporting the proposition that Encyte is an alter ego of Biologyx. Moreover, Plaintiff has not pled an alternative

liability basis for Encyte. Accordingly, Plaintiff's quasi-contractual and tort claims, Counts III through V and VII through IX, will be dismissed as to Encyte.

**C. The Claims Against Saab Will Be Dismissed (Counts VI through VIII)**

Plaintiff's promissory estoppel, account stated, and fraudulent inducement claims against Saab are exclusively premised on Saab's alleged promises made to Plaintiff, on Biologyx's behalf, that Biologyx would pay the outstanding Invoices pursuant to the Agreement. *See* Compl. ¶¶ 4, 11, 31, 37, 65-68, 72-73, 76-78. Defendants assert that Saab cannot be held personally liable for his actions taken in his role as Biologyx's CEO and President. Mot. at 10. Plaintiff claims that Saab can be held personally liable under a participation theory, as well as for making promises to pay Biologyx's outstanding Invoices to Plaintiff. Opp'n at 6-9. The Court disagrees with Plaintiff.

"It is well-settled that a corporate officer contracting on behalf of a corporation generally may not be held personally liable for contract damages '[u]nless the corporate officer extends promises in his individual capacity.'" *Laurel Mgmt. Grp., LLC v. White Sheep Corp.*, 2019 U.S. Dist. LEXIS 161460, at *11 (W.D. Pa. Sept. 23, 2019) (quoting *Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004)). Where a corporate officer does extend promises in his individual capacity, he may be liable for tortious conduct under a participation theory. *See Vosough v. Kierce*, 437 N.J. Super. 218, 233 (App. Div. 2014) (citing *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303-05 (2002)). "It follows that in order to state a contract-based claim against [a corporate officer]—*i.e.*, [for] promissory estoppel—the complaint must allege facts that make a plausible showing that [the corporate officer] made promises to [the] plaintiffs in his individual capacity rather than as a corporate officer of [the defendant]." *Laurel Mgmt. Grp., LLC*, 2019 U.S. Dist. LEXIS 161460, at *11-12.

Here, Plaintiff alleges only that Saab made promises to Plaintiff that Biologyx's outstanding Invoices would be paid. However, Plaintiff does not allege that these promises were made in Saab's personal capacity. Instead, these promises appear to have been made in Saab's role as Biologyx's CEO and President. *See generally* D.E. 24-1.[14] This conclusion is underscored by the fact that Biologyx, not Saab, owed the outstanding Invoices. Additionally, that Saab was communicating with Plaintiff on Biologyx's behalf squares with the language in the Agreement, which expressly provides that Biologyx's CEO was to be sent any notices meant for Biologyx. *See* Agreement ¶ 12.4 (identifying Biologyx's CEO, Saab, as the party to whom notices under the Agreement should be sent). Thus, that Saab was communicating with Plaintiff does not imply that Saab was acting outside of his role as Biologyx CEO and President. *See United Capital Funding Grp., LLC v. Brick City Brewing, LLC*, 2021 U.S. Dist. LEXIS 214457, at *11-13 (D.N.J. Nov. 4, 2021) (dismissing claim brought against corporate officer in personal capacity where scope of corporate parties' obligations was defined by contract and no allegations were made that there was an expectation that corporate officer would be personally liable under the contract).

Because Plaintiff has failed to allege a plausible basis to hold Saab personally liable for any claims arising out of Biologyx's purported breach of its Agreement with Plaintiff, the claims against Saab, Counts VI through VIII, will be dismissed.

[14] While Plaintiff asserts that "[o]n April 19, 2022 Saab made clear and definite promises to pay Plaintiff in order to induce Plaintiff to forestall Plaintiff's efforts to pursue the amounts due and owing from the Corporate Defendants," Compl. ¶ 65, Saab does not appear to have sent the referenced April 19, 2022 email, D.E. 24-1, in his personal capacity. For example, the email signature block includes Saab's title as Biologyx's "CEO and President," and the correspondence discusses Biologyx and Celularity's obligations to one another under the Agreement. *See generally* D.E. 24-1.

### D. Certain Claims Against Biologyx[15] Will Not Be Dismissed (Counts III through V and VII), But Others Will Be Dismissed (Counts II, VIII, and IX)

*1. The quasi-contractual claims against Biologyx will not be dismissed (Counts III through V and VII)*

Defendants argue that Plaintiff's quasi-contractual claims—unjust enrichment, quantum meruit, promissory estoppel, and account stated—must be dismissed as duplicative of/barred by Plaintiff's breach of contract claim. Mot. at 11, 14-18. Plaintiff claims that alternative pleadings are permitted, and thus, dismissal of Plaintiff's quasi-contractual claims would be premature. Opp'n at 9-10. The Court agrees with Plaintiff.

Pleading alternative or inconsistent claims is permitted. Fed. R. Civ. P. 8(d)(2), (3); *see also Medwell, LLC v. Cigna Corp.*, 2021 U.S. Dist. LEXIS 96292, at *12 (D.N.J. May 19, 2021) (explaining Federal Rule of Civil Procedure 8 allows alternative pleadings, including "quasi-contract theories along with a breach of contract claim, in case the court later finds that no contract existed"). Plaintiff's unjust enrichment, quantum meruit, promissory estoppel, and account stated claims are quasi-contractual claims arising from Biologyx's purported failure to remit payment to Plaintiff for the Products pursuant to the Agreement. *See* Compl. ¶¶ 53, 58, 62, 73. Accordingly, at this early juncture, Plaintiff's quasi-contractual claims, Counts III through V and VII, will not be dismissed as to Biologyx.

*2. The implied covenant of good faith and fair dealing claim against Biologyx will be dismissed (Count II)*

Defendants seek dismissal of Plaintiff's good faith and fair dealing claim, asserting that the Complaint does not suggest bad faith nor is the wrongful conduct alleged extraneous to the

---

[15] All claims brought against Biologyx are also brought against Encyte. However, because Plaintiff has not pled an adequate basis to hold Encyte liable under any claim, *see supra* Section III.B., this section addresses claims against Biologyx, with whom Plaintiff has sufficiently alleged the existence of a contractual relationship.

performance of the Agreement between Biologyx and Plaintiff. Mot. at 13-14. Thus, under Defendants' interpretation of Complaint, the economic loss doctrine bars Plaintiff's good faith and fair dealing claim. *Id.* at 12. Plaintiff responds that the alleged misconduct extends beyond merely breaching the Agreement, insofar as Biologyx has allegedly been marketing and selling Plaintiff's Products to buyers despite Biologyx's outstanding obligation to pay Plaintiff under the Agreement. Opp'n at 12-13 (citing Compl. ¶¶ 32, 35-36, 38). As pled,[16] the Court concludes that Plaintiff's good faith and fair dealing claim is barred by the economic loss doctrine.

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Rainforest Distrib. Corp. v. Vybes L.A. LLC*, 2021 U.S. Dist. LEXIS 164663, at *29 (D.N.J. Aug. 31, 2021) (internal quotation marks omitted) (quoting *Qile Chen v. HD Dimension, Corp.*, 2010 U.S. Dist. LEXIS 120599, at *25 (D.N.J. Nov. 15, 2010)); *see also Atlas Acquisitions, LLC v. Porania, LLC*, 2019 U.S. Dist. LEXIS 200564, at *6-7 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract . . . ."). It follows, "a tort claim can [only] be asserted alongside a breach of contract claim . . . if the tortious conduct is extrinsic to the contract between the parties." *Qile Chen*, 2010 U.S. Dist. LEXIS 120599, at *25-26 (citing *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, 2008 U.S. Dist. LEXIS 54054, at *17-18 (D.N.J. July 16, 2008)).

Here, Plaintiff's good faith and fair dealing claim is not extrinsic to the breach of contract claim. Specifically, Plaintiff's good faith and fair dealing claim is premised on "acts and omissions" done in "bad faith and for the purpose of frustrating the overarching purpose of the

---

[16] Plaintiff's Opposition attempts to supplant the pleadings in the Complaint by stating that the bad faith conduct complained of included a "black-market scheme of selling Plaintiff's products and pocketing the proceeds received," Opp'n at 12. However, the Complaint does not make such allegations. Accordingly, Plaintiff's newly made assertion will be disregarded for purposes of this Opinion.

Agreement . . ." Compl. ¶ 46. These purported "acts and omissions" done in "bad faith" consist of Biologyx marketing and selling Plaintiff's Products despite its failure to pay Plaintiff under the Agreement, as well as Biologyx's failure to adhere to Plaintiff's demand that it stop marketing and selling Plaintiff's Products. *Id.* ¶¶ 32, 35-36, 38. However, Biologyx's duty to not market and sell Plaintiff's Products following its failure to pay Plaintiff for the Products was not implied, but was, in fact, expressly included in the Agreement. The provision titled "<u>Effect of Termination</u>" expressly provides, "[n]othing in this Section 9.3 shall be construed to give [Biologyx] the right after expiration or termination of this Agreement to distribute or sell Product, other than to Celularity for liquidation by Celularity of its Product inventory, or to return any inventory in accordance with Section 2.5(d)." Agreement ¶ 9.3; *see also Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, 2013 U.S. Dist. LEXIS 180132, at *20-22 (D.N.J. Dec. 23, 2013) (finding good faith and fair dealing claim barred by economic loss doctrine where duties that were allegedly breached were not implied but rather were expressly provided for in parties' contract). Accordingly, Plaintiff's good faith and fair dealing claim, Count II, is barred by the economic loss doctrine, and will, therefore, be dismissed as to Biologyx.

*3. The fraudulent inducement claim against Biologyx will be dismissed (Count VIII)*

Defendants seek to dismiss Plaintiff's fraudulent inducement claim, arguing that the claim is barred by the economic loss doctrine and, even if the doctrine did not apply, the claim is not pled with particularity. Mot. at 12-13, 18-19. Plaintiff argues that the economic loss doctrine does not apply because Plaintiff's fraud claims are extrinsic to the Agreement and the claim is pled with particularity. Opp'n at 21-23. The Court agrees with Defendants: Plaintiff's fraudulent inducement claim is barred by the economic loss doctrine.[17]

---

[17] *See supra* Section III.D.2. (outlining scope of economic loss doctrine).

Here, Plaintiff has not pled that Biologyx breached duties independent of those arising under the Agreement. Specifically, Plaintiff alleges that Defendants "made various false representations and assurances to Plaintiff that payment would be made for the outstanding Invoices," Compl. ¶ 76, which resulted in "Plaintiff justifiably believe[ing] the representations and assurances, and in reliance thereon temporarily relinquish[ing] its rights to pursue immediate payment of the Invoices," *id.* ¶ 79. Biologyx's duty to pay the outstanding invoices, however, arises directly from the Agreement, *i.e.*, "Celularity shall invoice [Biologyx] after Product has been issued to the [Biologyx] Inventory. Unless otherwise agreed by the Parties, payment terms for such invoices will be . . . ." Agreement ¶ 4.2. And the "rights" Plaintiff alleges it temporarily relinquished are contractual rights, *i.e.*, "[i]f Celularity does not receive payment of any undisputed sum due to it on or before the due date, simple interest shall thereafter accrue . . . ." Agreement ¶ 4.4.

At bottom, Plaintiff's fraudulent inducement claim alleges that the Agreement was breached in a fraudulent manner because payments were promised but not made. *See Qile Chen*, 2010 U.S. Dist. LEXIS 120599, at *28-29 (dismissing fraudulent inducement claim where plaintiff's allegations giving rise to alleged fraud were intrinsic to underlying agreement because plaintiff was merely alleging that defendants breached the contract in a fraudulent fashion); *Unimaven, Inc. v. Texas TR, LLC*, 2020 U.S. Dist. LEXIS 164498, at *17-18 (D.N.J. Sept. 8, 2020) ("[T]he alleged promise of timely payments is duplicative of [p]laintiff's breach of contract claim, and therefore cannot be the basis of a simultaneous fraudulent inducement claim."). Accordingly, Plaintiff's fraudulent inducement claim, Count VIII, is barred by the economic loss doctrine, and will, therefore, be dismissed as to Biologyx.

4. *The conversion claim against Biologyx will be dismissed (Count IX)*

Defendants seek to dismiss Plaintiff's conversion claim as a repackaged breach of contract claim. *See* Mot. at 19-20. Plaintiff responds that its conversion claim is not just another claim for money damages owed under the Agreement, but rather is based upon Defendants' conversion of Plaintiff's Products. Opp'n at 23. The Court disagrees with Plaintiff.

In New Jersey, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *LaPlace v. Briere*, 404 N.J. Super. 585, 595 (App. Div. 2009) (internal quotation marks and citation omitted). But "courts 'have expressly restricted application of the doctrine of conversion when it seeks to turn on a claim based on breach of contract.'" *Staff4Jobs, LLC v. List Logistics, LLC*, 2019 U.S. Dist. LEXIS 107443, at *17 (D.N.J. June 27, 2019) (quoting *Longo v. Envt'l Prot. & Improvement Co., Inc.*, 2017 U.S. Dist. LEXIS 85681, at *18 (D.N.J. June 5, 2017)).

Here, Plaintiff's conversion claim asserts "by retaining the Products and failing to compensate Plaintiff for the same," that Plaintiff's property was converted. Compl. ¶ 84. In other words, Plaintiff claims that it was not paid for the Products it provided to Biologyx pursuant to the agreement between Plaintiff and Biologyx. *See* Agreement ¶ 4.1 ("<u>Purchase and Sale of Product.</u> During the Term, Celularity shall sell, and [Biologyx] shall purchase the Products pursuant to each Purchase Order."). This claim clearly repackages Plaintiff's breach of contract claim. Accordingly, Plaintiff's conversion claim, Count IX, will be dismissed. *See Staff4Jobs, LLC*, 2017 U.S. Dist. LEXIS 85681, at *17 (dismissing conversion claim after finding claim "clearly akin" to plaintiff's breach of contract claim as both claims turned on defendant's failure to remit payment for services provided).

**E. The Request for Attorneys' Fees and Costs Will Be Dismissed**

Finally, Defendants move to dismiss Plaintiff's request for attorneys' fees and costs, arguing that each party must bear its own attorneys' fees because there is no basis under which fee-shifting is available. Mot. at 11. Plaintiff provides no response. *See generally* Opp'n. The general rule is that each party shall bear the cost of their own attorneys' fees and costs. *See Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Plaintiff has alleged no basis to depart from this general rule. Accordingly, Plaintiff's request for attorneys' fees and costs will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be **GRANTED *in part*** and **DENIED *in part***. Accordingly, the following claims will be **DISMISSED *without prejudice***:[18] Counts I through V and VII through IX as to Encyte; Counts VI through VIII as to Saab; and Counts II, VIII, and IX as to Biologyx; however, Plaintiff's request for attorneys' fees and costs will be **DISMISSED *with prejudice***.[19] Plaintiff will have thirty (30) days to file an Amended Complaint curing the deficiencies noted herein.

Dated: February 8, 2024

Evelyn Padin, U.S.D.J.

[18] Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is to be "freely given when justice so requires." Thus, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (same). However, the Court cautions Plaintiff to avoid pleading non-meritorious claims in its Amended Complaint.

[19] Permitting Plaintiff to replead this request would be futile, particularly given Plaintiff's failure to oppose Defendants' argument concerning attorneys' fees and costs, as well as the Agreement's omission of any reference to the same.