**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELULARITY INC., <br><br> Plaintiff, <br><br> v. <br><br> EVOLUTION BIOLOGYX, LLC, <br><br> Defendant. | No. 23cv2135 (EP) (LDW) <br><br> **MEMORANDUM ORDER** |

**PADIN, District Judge.**

On April 2, 2025, the Hon. Leda D. Wettre, U.S.M.J, denied Defendant-Counterclaimant Evolution Biologyx, LLC's ("Biologyx" or "Defendant") motion for an extension of time to complete discovery, D.E. 79 ("Extension Motion" or "Mot."). D.E. 82 ("Order"). Biologyx now appeals the Order. D.E. 84-3 (the "Appeal").[1] Plaintiff-Counterclaim Defendant Celularity Inc. ("Celularity" or "Plaintiff") opposes the Appeal. D.E. 85 ("Opposition" or "Opp."). Biologyx replies. D.E. 86 ("Reply").

The Court decides the Appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). Having considered the Appeal, the parties' submissions, and all relevant items on the docket, the Court concludes that Judge Wettre's Order is neither clearly erroneous nor contrary to law. Accordingly, for the reasons stated herein, the Court will **DENY** the Appeal and **AFFIRM** Judge Wettre's Order.

---

[1] The Court refers to Biologyx's brief at D.E. 84-3 as the "Appeal" for ease of reference. The Notice of Motion is at D.E. 84.

I.   **BACKGROUND**[2]

Celularity sells placental-derived products.  D.E. 1 ("Complaint" or "Compl.") ¶ 1. Biologyx entered into an agreement with Celularity to buy certain of Celularity's products for the purposes of marketing, selling, and distributing the same (the "Agreement").  *Id.* ¶¶ 23–24.  From late 2021 through early 2022, Biologyx placed several orders to purchase Celularity's products pursuant to the Agreement.  *Id.* ¶ 26.  Plaintiff fulfilled Biologyx's orders and provided Biologyx with invoices.  *Id.* ¶ 27.  Despite several demands for payment, Biologyx allegedly failed to pay the invoices, *id.* ¶ 28, which, per Celularity, constituted a material breach of the Agreement, *id.* ¶ 33.  In April 2023, after Biologyx allegedly failed to cure its material breach, Celulairty issued a "Notice of Termination," notifying Biologyx of the Agreement's termination.  *Id.* ¶ 34.  Celularity's Notice of Termination expressly "demand[ed] that [Biologyx] immediately cease the sale or marketing of the Products in any manner and [that Biologyx] remove all references to Celularity's Marks from [its] website."  *Id.* ¶ 35.  At the time the Complaint was filed, Biologyx had allegedly yet to pay the Invoices and allegedly continued to market Celularity's products on its website.  *Id.* ¶¶ 37–38.

In April 2023, Celularity filed a nine-count Complaint against Biologyx, Biologyx's Chief Executive Officer Saleem S. Saab ("Saab"), and Encyte, LLC ("Encyte")[3] stemming from Biologyx's alleged breach of the Agreement.  *See generally* Compl.  In July 2023, Biologyx, Saab, and Encyte moved to dismiss Counts I through IX of the Complaint as to Encyte, which consist of

---

[2] The Court assumes the parties' familiarity with the background of this case.  Therefore, this Background Section is limited to facts relevant to the Appeal.

[3] Encyte is not party to the Agreement but was named in the Complaint because it shares a corporate principal and principal place of business with Biologyx and advertises itself as Biologyx's partner.  *See* D.E. 38 ("Motion to Dismiss Opinion").

a breach of contract claim, quasi-contractual claims (i.e., unjust enrichment), and related tort claims; Count VI through VIII as to Saab, which consist of a promissory estoppel claim, an account stated claim, and a fraudulent inducement claim; and Counts II through IX as to Biologyx, which consist of quasi-contractual claims (i.e., unjust enrichment) and tort claims. D.E. 18-1 ("Motion to Dismiss").

While the Motion to Dismiss was pending, (1) the parties submitted a joint discovery plan, D.E. 21; (2) Judge Wettre entered a pretrial scheduling order, D.E. 22 ("First Scheduling Order"); and (3) the parties began to engage in discovery, *see, e.g.*, D.E. 31 (December 14, 2023, joint status update regarding discovery responses and document production). Per the First Scheduling Order, entered on August 23, 2023, fact discovery was to close on April 30, 2024.

On February 8, 2024, the Court dismissed all claims against Encyte and Saab, as well as Celularity's good faith and fair dealing (Count II), fraudulent inducement (Count VIII), and conversion (Count IX) claims against Biologyx. Motion to Dismiss Opinion. Biologyx then filed an answer to the Complaint and counterclaims against Celularity on April 4, 2024. D.E. 43 ("Biologyx's Answer and Counterclaim" or "Answer & Counterclaim"). Biologyx brings eight counterclaims against Celularity, all stemming from Celularity's own alleged breach of the Agreement. Answer & Counterclaim.[4]

After the filing of its Answer & Counterclaim, Biologyx "suggest[ed] additional limited written discovery to keep the case moving forward," proposing that the parties be limited to ten interrogatories and document requests based on the counterclaim. D.E. 81-2.

---

[4] Count I is for breach of contract, Count II is for breach of express warranty, Count III is for breach of the implied warranty of merchantability, Count IV is for breach of the implied warranty of fitness for a particular purpose, Count V is for breach of the implied covenant of good faith and fair dealing, Count VI is for unjust enrichment, Count VII is for quantum meruit, and Count VIII is for fraud. *Id.* ¶¶ 118–183.

3

Later in April 2024, Judge Wettre entered an amended scheduling order, adopting the Biologyx's suggestion regarding the permitted number of document requests related to the counterclaims—allowing the parties to serve "up to 10 additional interrogatories and 10 additional requests for production pertaining to Evolution Biologyx, LLC's counterclaims and plaintiffs' defenses thereto on or before May 3, 2024, to be responded to by June 10, 2024." D.E. 45 ("Second Scheduling Order"). The Second Scheduling Order also extended fact discovery to August 9, 2024. Celularity answered Biologyx's counterclaims on April 25, 2024. D.E. 46.

On May 3, 2024, Biologyx served on Celularity ten document requests (with numerous subparts) related to Biologyx's counterclaims, D.E. 84-6, Ex. V ("May 3, 2024, Document Requests"), exhausting the ten additional requests permitted by the Second Scheduling Order.

Then, on August 7, 2024, Judge Wettre extended fact discovery to November 4, 2024, noting that the extension of fact discovery was "**FOR A FINAL TIME**." D.E. 51 ("Third Scheduling Order"). The Third Scheduling Order did not permit additional document requests.

On September 11, 2024, Biologyx served an additional five document requests on Celularity, D.E. 81-5 ("September 11, 2024, Document Requests"), thereby exceeding the number of document requests permitted by the Court, *see* Second Scheduling Order.

On October 11, 2024, Judge Wettre once again extended fact discovery, as requested by Biologyx—this time to December 19, 2024—"due to extenuating personal circumstances of Saleem Saab." D.E. 57 ("Fourth Scheduling Order"). On December 18, 2024, Biologyx sought yet another extension of the fact discovery deadline, D.E. 59, which Judge Wettre granted, D.E. 63 ("Fifth Scheduling Order"), after holding a telephonic conference, D.E. 62. This Fifth Scheduling Order, entered on January 7, 2025, stated, "Fact discovery is extended **FOR A FINAL TIME** through **February 28, 2025**. **THERE WILL BE NO FURTHER EXTENSIONS OF**

4

**FACT DISCOVERY ABSENT MANIFEST INJUSTICE**." Neither the Fourth nor the Fifth Scheduling Orders permitted additional discovery requests.

Two days before the final February 28, 2025, discovery deadline, Biologyx served twelve additional requests for production on Celularity. D.E. 84-5, Ex. C ("February 26, 2025, Document Requests"). These requests seek granular financial statements and sales information about Celularity's drug products Interfyl, Biovance, and Biovance 3L. *See id.*

On March 4, 2025, Biologyx again sought an extension of the fact discovery deadline, this time for the purpose of obtaining the information that is the subject of the instant Appeal. D.E. 76. After Judge Wettre instructed Biologyx to file a letter motion "setting forth all remaining discovery it seeks and why there is good cause for further extension of a final deadline," D.E. 77, Biologyx filed the Extension Motion on March 14, 2025. Celularity filed its opposition to the Extension Motion on March 21, 2025. D.E. 81. Judge Wettre then denied Biologyx's Extension Motion on April 2, 2025. Order. In the Order, Judge Wettre concluded that it was appropriate to permit Biologyx "to use any documents produced in response to third-party subpoenas served during the fact discovery period in subsequent phases of this litigation," *id.* at 1, but denied Biologyx's: (1) "request for an extension of fact discovery in order to depose" "non-party John McInnes, an attorney who represented plaintiff with respect to regulatory affairs," *id.* at 2; and (2) request to reopen fact discovery to allow Biologyx "to obtain responses to its February 26, 2025[,] supplemental document requests," *id.* at 3. This Appeal followed.

II.   **LEGAL STANDARD**

"A United States [m]agistrate [j]udge 'may hear and determine any [non-dispositive] pretrial matter pending before the [C]ourt." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a). "On appeal from such an order, the scope of this Court's review is narrow." *Allen v. Banner Life*

5

*Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022). A district court may only "modify or set aside any part of the [non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to findings of fact, while the "contrary to law" standard applies to matters of law. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "A ruling is 'contrary to law' if the magistrate judge has misinterpreted or misapplied applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (internal quotation marks added). "The burden of demonstrating that [an] order [is] clearly erroneous or contrary to law falls on the party who has filed the notice of appeal." *Champion Painting Specialty Servs. Corp. v. Del. River Port Auth.*, 658 F. Supp. 3d 241, 247 (D.N.J. 2023) (citing *Travelers Indem. Co. v. Dammann & Co., Inc.*, 529 F. Supp. 2d 752, 758–59 (D.N.J. 2008)).

"Particular deference is accorded to magistrate judges on discovery issues." *Costa v. Cnty. of Burlington*, 584 F. Supp. 2d 681, 684 n.2 (D.N.J. 2008). "Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006). This deferential standard is "especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1525, 1547 (D.N.J. 1993), *aff'd in part on other grounds and rev'd in part on other grounds*, 50 F.3d 1239 (3d Cir. 1995). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that

6

discretion is abused only where no reasonable [person] would take the view adopted by the . . . court." *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976).

### III.   ANALYSIS

Here, the Court concludes that Biologyx has not met its burden of demonstrating that Judge Wettre's Order declining to reopen discovery for (1) the production of the financial documents sought through the February 26, 2025, Document Requests or (2) the deposition of John McInnes is clearly erroneous, contrary to law, or an abuse of discretion.

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  This "'good cause' standard is not a low threshold," *J.G. v. C.M.*, No. 11-2887, 2014 WL 1652793, at *1 (D.N.J. Apr. 23, 2014), because "[e]xtensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and would severely impair the utility of Scheduling Orders," *Baker v. U.S. Marshal Serv.*, No. 12-494, 2014 WL 2534927, at *2 (D.N.J. June 5, 2014).  To show "good cause," "the movant must show that the deadlines c[ould not] [have] be[een] reasonably met despite its diligence." *Kennedy v. Hoegh Autoliners Shipping PTE Ltd.*, No. 18-8599, 2021 WL 7904032, at *4 (D.N.J. Feb. 17, 2021), *report and recommendation adopted*, No. 18-8599, 2021 WL 7841701 (D.N.J. May 24, 2021) (citation modified).  "While diligence is the centerpiece of the good cause analysis," the Court may also assess "the importance of the evidence, . . . the logistical burdens and benefits of re-opening discovery, [and] . . . prejudice to the non-moving party." *Id.* at *5 (quoting *J.G.*, 2014 WL 1652793, at *2).

As explained below, Judge Wettre correctly focused on Biologyx's lack of diligence in determining that Biologyx had not demonstrated "good cause" to reopen discovery to obtain the financial documents and take Mr. McInnes's deposition.  *See* Order at 2–3.  And, despite

7

Biologyx's suggestion to the contrary,[5] Judge Wettre also appropriately considered the importance of the requested evidence, *see, e.g.*, Order at 2 ("Defendant has not established . . . any particular need for the deposition of [Mr. McInnes] . . . ."). The Court will accordingly **AFFIRM** Judge Wettre's Order declining to reopen discovery for the production of the requested financial documents or the deposition of Mr. McInnes as the Order is not clearly erroneous, contrary to law, or an abuse of discretion.

### A.     Financial Documents Requested on February 26, 2025

Judge Wettre determined that Biologyx "offers no reasonable justification for its decision to serve [the February 26, 2025, Document Requests], two days prior to the close of an eighteen-month discovery period," and that Biologyx has not articulated why the information sought in the those requests "is necessary to establish its counterclaim damages." *Id.* at 3. The Court agrees.

*First*, Biologyx cannot demonstrate its good faith and diligence with respect to the financial documents it requested on February 26, 2025, because Biologyx flaunted Judge Wettre's orders in making the requests in the first place. In the Second Scheduling Order, Judge Wettre permitted the parties to serve "up to 10 additional interrogatories and 10 additional requests for production pertaining to Evolution Biologyx, LLC's counterclaims and plaintiffs' defenses thereto on or before May 3, 2024, to be responded to by June 10, 2024." While the Second Scheduling Order was later amended (several times) to extend the discovery period, none of those subsequent amendments increased the number of requests for production the parties were permitted to serve. *See* Third Scheduling Order, Fourth Scheduling Order, & Fifth Scheduling Order. Biologyx never sought leave to serve on Celularity more than ten document requests related to Biologyx's counterclaims, but nevertheless proceeded to violate Judge Wettre's Second Scheduling Order by

---

[5] Biologyx erroneously argues that the Order only addressed the good faith and diligence of the moving party. *See* Appeal at 19.

8

serving more than ten such requests. On September 11, 2024, Biologyx served an additional five document requests on Celularity, *see* September 11, 2024, Document Requests, after having already exhausted its ten document requests in its May 3, 2024, Document Requests. Biologyx then doubled down on its violation of the Second Scheduling Order by serving the twelve February 26, 2025, Document Requests for which Biologyx now seeks to reopen discovery. Biologyx's counterclaim-related document requests accordingly add up to, at minimum,[6] 27 requests—almost triple the number permitted by Judge Wettre in the Second Scheduling Order.

Biologyx's briefing is completely devoid of any justification for its failure to seek leave to serve more document requests than the ten permitted by the Second Scheduling Order.[7] Instead, Biologyx claims that Celularity has used the Second Scheduling Order "as a shield against all future supplemental requests discovered and investigated through the litigation." Appeal at 20. Setting aside the inconvenient (to Biologyx) fact that it was *Biologyx* that proposed that the parties be limited to ten interrogatories and document requests based on the counterclaim, *see* D.E. 81-2, Biologyx apparently fails to appreciate that the Second Scheduling Order is a *court order* that cannot be disobeyed at will. *See Breslin v. Dickinson Twp.*, No. 09-1396, 2011 WL 3292924, at *7 (M.D. Pa. Aug. 1, 2011) ("It is beyond dispute that the district court has the authority and the discretion to impose limitations and restrictions on the nature, scope, extent and type of discovery which it will permit the parties to propound."). Biologyx's Appeal therefore "invites the Court to

---

[6] Celularity further argues that the number of subparts in the May 3, 2024, Document Requests rendered these initial requests procedurally improper, too. *See* Opp. at 3 n.2. Because it is clear that Biologyx has exceeded the maximum number of document requests permitted by Judge Wettre irrespective of Biologyx's use of subparts, the Court need not address this subpart issue.

[7] Judge Wettre's extensions of the time to complete fact discovery in the Third and Fourth Scheduling Orders were "for the limited purpose of completing all outstanding discovery, not an invitation to serve new discovery requests." *What A Smoke, LLC v. Duracell U.S. Operations*, Inc., No. 19-16657, 2022 WL 1442227, at *11 (D.N.J. May 6, 2022).

ignore [Biologyx's] failure to comply with [the Second Scheduling Order]. Indeed, the [Appeal] does more than invite [the Court] to ignore this failure; it actually urges [the Court] to reward this conduct by compelling answers to requests that [Biologyx] were not authorized to propound." *Id.* at *7. The Court declines to do so.

*Second*, Biologyx has not adequately explained why it could not have sought the financial information it seeks through the February 26, 2025, Document Requests earlier than two days prior to the close of fact discovery. Biologyx's suggestion that it could not have served these requests earlier because "the deposition of Celularity CFO David Beers . . . was withheld until the final week of discovery"—preventing Biologyx from "understanding what financial analysis Celularity conducts and how it is filed" until Biologyx could "review[] the transcript and consult[] with its damages experts," Appeal at 25–26—is unavailing. Judge Wettre remarked that she was "thoroughly unconvinced that [Biologyx] did not appreciate the need to request such seemingly basic financial information well before the final fact discovery deadline." Order at 3. The undersigned is similarly unconvinced. Moreover, while Biologyx may now regret its decision not to have engaged a damages expert until after it had served its allotted ten counterclaim-related document requests,[8] its error is not the Court's to remedy.[9]

---

[8] Biologyx explains that it "engaged a damages expert" after it served its May 3, 2024, Document Requests. *See* Appeal at 21.

[9] Biologyx also argues that it had previously requested the documents sought in the February 26, 2025, Document Requests in prior document requests. *Id.* at 19–20. The Court first notes that Biologyx cannot, as a matter of logic, argue both (1) that it could not have requested the information sought in the February 26, 2025, Document Requests until after engaging its damages expert and taking the deposition of Mr. Beers and also (2) that it had previously requested the information. Moreover, even the information sought through the February 26, 2025, Document Requests were within the scope of previous requests, Biologyx could have—and should have—sought to obtain that information prior to two days before the close of fact discovery. While Biologyx alludes to discovery deficiency letters it suggests demonstrate its diligence, *see* Appeal

And *third*, as Judge Wettre correctly concluded, Biologyx has not articulated why the financial information it seeks through the February 26, 2025, Document Requests "is necessary to establish [its] counterclaim damages." *Id.* Biologyx repeatedly asserts that this information "is critically important," *see, e.g.*, Appeal at 26, without actually explaining *how* and *why* the information is critical to its damages claims. Biologyx nearly exclusively relies on a declaration from its damages expert to support that assertion. *See* Appeal at 26–27 (quoting D.E. 84-9 ("Expert Declaration")). But the Court is not required to simply take the word of a party's damages expert at face value without further examination. Here, all the Expert Declaration does is repeat boilerplate language stating that the financial information Biologyx already has "does not allow for a precise calculation of [Biologyx's] potential economic damages related" to each of Interfyl, Biovance, and Biovance 3L. *See* Expert Declaration at 2–5. The Expert Declaration does not, for instance, explain why "it is critical to get an understanding of Celularity's sales . . . of Interfyl by the markets it was sold into." *Id.* at 2. Without further explanation of, *inter alia*, why such a market breakdown is required for Biologyx's damages expert to calculate (perhaps, e.g., because only some markets are relevant to Biologyx's claimed damages), the Court is unconvinced that the information Biologyx seeks is critical to its case. And Biologyx's failure to seek this information

---

at 3, the final letter it submitted to Judge Wettre before the close of fact discovery—which purported to "provide a clear statement of what [Biologyx] view[ed] as the deficiencies" in Celularity's productions—does not reference the document request Biologyx now claims sought the information regarding Interfyl also sought in the February 26, 2025, Document Requests and references only in passing the document request regarding Biovance and Biovance 3L it now claims sought information also sought in the February 26, 2025, Document Requests. *See* D.E. 84-5, Ex. L (February 4, 2025, letter to Judge Wettre broadly requesting more documents from all Celularity employees, contractors, board members, etc., in response to 25 document requests, focusing on emails and text messages—not the revenue reports regarding Biovance and Biovance 3L later sought by Biologyx in the February 26, 2025, Document Requests, which Biologyx now claims are critical). The Court therefore agrees with Judge Wettre that Biologyx "had ample opportunity to request this information well before the final fact discovery deadline." Order at 3.

11

earlier in the discovery period further belies its assertion that the information is critical to its case, as does Biologyx's decision not to engage its damages expert earlier, *see supra* n.8.  This case is therefore a far cry from *Meyers v. Pennypack Woods Woods Home Ownership Ass'n*, the racial discrimination case Biologyx repeatedly cites, *see, e.g.*, Appeal at 18, where the Third Circuit held that the exclusion of two key witnesses who would have directly rebutted the district court's conclusion that the defendant did not discriminate against the plaintiff because the defendants' policies had no discriminatory effect against African-Americans in general was "an extreme sanction."  559 F.2d 894, 904–05 (3d Cir. 1977).[10]

Because Biologyx has failed to show that Judge Wettre's conclusion that good cause did not exist to extend discovery for the production of documents responsive to the February 26, 2025, Document Requests, was clearly erroneous, contrary to law, or an abuse of discretion, the Court will **DENY** Biologyx's Appeal as it relates to the February 26, 2025, Document Requests.

### B.      McInnes Deposition

The Court also agrees with Judge Wettre that Biologyx "has not established good cause for its failure to seek Mr. McInnes's deposition at any time within the general fact discovery period, nor has it established any particular need for the deposition of an attorney whose testimony may be subject to the attorney-client privilege."  Order at 2.

---

[10] The Court further notes that it is not clear that the specific financial documents Biologyx seeks even exist.  Celularity convincingly argues that these documents do not in fact exist and that it cannot be compelled to create documents to respond to Biologyx's requests.  *See* Opp. at 16–17 (quoting *Auto. Fin. Corp. v. DZ Motors, LLC*, No. 16-7955, 2018 WL 11446277, at *6 (D.N.J. Dec. 17, 2018) ("It has been long and widely held that the Court cannot compel a party to create new documents for the purpose responding to a Request for Production.")).  Given Biologyx's other failures of proof described *supra*, the Court need not, however, decide this issue—or even wade into the question of the relevance of the financial information (which Celularity also challenges).

Biologyx claims that "the need to serve a subpoena [on Mr. McInnes] was evident following the deposition of Celularity's Corporate Representative" and that it now needs to depose Mr. McInnes regarding the documents it obtained via subpoena. Appeal at 34.[11] But the deposition of Celularity's corporate representative occurred on November 22, 2024, Appeal at 24, and Biologyx did not serve its document subpoena on Mr. Innes until December 17, 2024, Opp. at 18 (citing D.E. 81-15). And, as Judge Wettre pointed out, Biologyx never even issued a subpoena for Mr. McInnes's *deposition* prior to the close of discovery; it did so only for documents. Order at 2; *see also* Opp. at 18. Biologyx does not explain why it did not issue a subpoena for Mr. McInnes's testimony at the time it subpoenaed his documents.[12] *See* Appeal; Reply. In any event, the Court doubts that Biologyx did not appreciate the supposed importance of Mr. McInnes's testimony until after the deposition of Celularity's corporate representative given that "[t]here is no dispute that Mr. McInnes likely was known to [Biologyx] prior to this lawsuit given the parties' business relationship, but in any case no later than January 12, 2024, when [Celularity] served its document production." Order at 2. Accordingly, the Court finds that Biologyx has not demonstrated its diligence with respect to the deposition of Mr. McInnes it seeks.

---

[11] Judge Wettre permitted Biologyx to receive responses to third party document subpoenas outstanding at the time of the issuance of the Order—including the subpoena issued to Mr. McInnes—and use the received documents in this action. Order at 2.

[12] Biologyx cites only one (out-of-Circuit) case to support its position that "[c]ourts have allowed parties to take depositions after the discovery deadline, given the additional information recently obtained through discovery." Appeal at 33–34. And, as Celularity correctly comments, the party seeking to depose a witness after the deadline in that case had actually requested the deposition of that witness and noticed the deposition to take place during the discovery period. Opp. at 19–20 (citing *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC*, No. 22-2331, 2024 WL 68366, at *4–5 (D. Kan. Jan. 5, 2024), *reconsideration denied*, 2024 WL 757154 (D. Kan. Feb. 23, 2024)). Biologyx took neither of those actions here.

13

The Court further concludes that Biologyx has failed to demonstrate that Mr. McInnes's testimony is important—much less critical—to its case. In its Appeal, Biologyx merely parrots the argument regarding Mr. McInnes that Judge Wettre rejected in her Order, without addressing her concern that, because Mr. McInnes was Celularity's regulatory counsel, his testimony may be subject to the attorney-client privilege, *see* Order at 2. *Compare* Extension Motion at 10, *with* Appeal at 34. That argument—"that Mr. McInnes has significant knowledge on the actions . . . Celularity took to address the FDA's position change on Medicare part B reimbursements," Appeal at 34—does not explain how and why Mr. McInnes's testimony on that topic (or others) would not be privileged. The Court is therefore unable to conclude that the information Biologyx would obtain from deposing Mr. McInnes, if any, is important to Biologyx's counterclaims.

Accordingly, the Court holds that Biologyx has failed to meet its burden of demonstrating that Judge Wettre's conclusion that good cause did not exist to extend discovery for Biologyx to depose Mr. McInnes was clearly erroneous, contrary to law, or an abuse of discretion, and will **DENY** Biologyx's Appeal as it relates to Mr. McInnes's deposition.

IV.    **CONCLUSION AND ORDER**

For the foregoing reasons,

**IT IS**, on this **10th** day of November 2025,

**ORDERED** that Defendant's Appeal, D.E. 84, is **DENIED**; and it is further

**ORDERED** that Magistrate Judge Wettre's Order, D.E. 82, is **AFFIRMED**; and it is further

**ORDERED** that Defendant's request to extend fact discovery is **DENIED**.

Evelyn Padin, U.S.D.J.